# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SYSTEM ONE HOLDINGS, L.L.C., a )
Delaware limited liability company, )
)
                Plaintiff, )
)
                v. )      02: 07cv0132
)
RALPH HILL, JR., an individual, and )
DIAMOND TECHNICAL SERVICES, INC., )
a Pennsylvania corporation, )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER OF COURT

August 26, 2008

Presently before the Court for disposition are the following:

• MOTION FOR PARTIAL SUMMARY JUDGMENT, with brief in support, filed by Defendant Ralph H. Hill, Jr. ("Hill") (*Document Nos. 74 and 75*), the MEMORANDUM OF LAW IN OPPOSITION filed by Plaintiff System One Holdings, L.L.C. (*Document No. 92)*, and the REPLY filed by Hill (*Document No. 99*);

• MOTION FOR PARTIAL SUMMARY JUDGMENT, with brief in support, filed by Diamond Technical Services, Inc. ("DTS") (*Document Nos. 78 and 79*) and the MEMORANDUM OF LAW IN OPPOSITION filed by Plaintiff System One Holdings, L.L.C. (Document No. 94); and

• MOTION FOR PARTIAL SUMMARY JUDGMENT, with brief in support, filed by Plaintiff System One Holdings, L.L.C. (*Document Nos. 81 and 82*), the BRIEF IN OPPOSITION filed by DTS (Document No. 87), the BRIEF IN OPPOSITION filed by Hill

(Document No. 89), and the REPLY TO HILL'S BRIEF IN OPPOSITION filed by Plaintiff (*Document No. 101*).

The issues have been fully briefed and the matter is ripe for disposition. After a careful consideration of the motions, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that the 1999 and 2000 SPEC Option Agreements are not enforceable by Plaintiff to bind Hill or to create a basis for its claims against DTS. Accordingly, the Motions for Partial Judgment by Hill and DTS will be granted and the Motion for Partial Summary Judgment filed by Plaintiff will be denied.

**Background**

All parties, counsel, and the Court are familiar with the background facts of this case and, therefore, the Court will recite only those facts pertinent to the resolution of the pending motions. On July 3, 2007, Plaintiff filed an Amended Complaint in which it asserted a new cause of action, breach of contract, based on allegations that Hill breached a covenant not to compete reflected in a 1999 stock option agreement between Hill and SPEC Group Holdings, Inc. (hereinafter "SPEC- PA") and a 2000 stock option agreement between Hill and SPEC Group Holdings, Inc. (hereinafter "SPEC-DE").

Hill began his employment in 1989 with SPEC-PA. Through a series of complex mergers, acquisitions, and divestitures, Hill eventually became employed by Hudson Global Resources Holdings, Inc. ("Hudson"). Defendants Hill and DTS both contend that Hudson is a very different entity, in name and in substance, from SPEC-PA and SPEC-DE and, accordingly, the restrictive covenants contained in the 1999 and 2000 Stock Option Agreements are not valid

as they are not assignable. Plaintiff contends that Hudson "is the very same corporate entity as SPEC Group Holdings, Inc., both as a matter of fact and as a matter of law" and, accordingly, no assignment of the restrictive covenants was necessary.

**Hill's Employment History**

SPEC Consultants, Incorporated was incorporated in the Commonwealth of Pennsylvania as a domestic, for-profit corporation on or about November 8, 1979. On or about August 27, 1997, SPEC Consultants, Incorporated officially changed its corporate name from "SPEC Consultants, Incorporated" to "SPEC Group Holdings, Inc." (hereinafter referred to as "SPEC-PA").[1] In 1999, SPEC-PA had its principal place of business in Harmarville, Pennsylvania. Its management team consisted of J.P. Sakey, Chief Executive Officer; Joe Stevens, Chief Financial Officer; Rick McMahill, and Brian Schulinger. SPEC-PA annually generated approximately 100 million dollars in revenue.

In December of 1999, a series of transactions occurred by which SPEC-PA was redomesticated from Pennsylvania to Delaware and by which all of the stock of SPEC-PA was purchased by a newly-domesticated Delaware corporation, which was itself incorporated under the same name SPEC Group Holdings, Inc. (hereinafter referred to as "SPEC-DE"). SPEC-DE was incorporated as a domestic, for-profit corporation under the laws of the State of Delaware on or about December 7, 1999. On or about December 10, 1999, SPEC-DE formed "SPEC Temco, Inc." as a wholly-owned subsidiary and incorporated SPEC Temco, Inc. in Pennsylvania. As of December 2000, the SPEC-DE board of directors included J. P. Sakey and

---

[1] Effective August 1, 1999, Hill entered into a SPEC Group Holdings, Inc. Stock Option Agreement with SPEC-PA.

Patrick Hough, and management consisted of J. P. Sakey, Chief Executive Officer; Jill Stevens, Chief Financial Officer, Rick McMahill, and Brian Schuliger.

On or about December 15, 1999, SPEC-PA, SPEC-DE, and SPEC Temco, Inc. entered into a Plan of Merger. At this time, Hill became an employee of SPEC-DE. Pursuant to this Plan of Merger, SPEC Temco, Inc. was merged with and into SPEC-PA, with SPEC-PA being the surviving corporation. The Plan of Merger further provided for a stock-for-stock exchange whereby SPEC-DE acquired all of the stock of SPEC-PA and SPEC-PA acquired all of the stock of SPEC Temco, Inc. SPEC-DE's corporate headquarters were in Harmarville, PA, and it had offices in Madison, Lansdale, and Cheswick, PA; Orlando, FL; and Lynchburg, VA.

On December 28, 1999, SPEC-DE filed an Amended and Restated Certificate of Incorporation with the Delaware Secretary of State, which reflected the conversion of the stock of SPEC-PA to SPEC-DE. As a result of the stock transfer, SPEC-PA became a wholly owned subsidiary of SPEC-DE.[2]

On or about December 6, 2000, SPEC-DE, including its wholly-owned subsidiary SPEC-PA, was acquired by TMP Worldwide Inc., ("TMP"), a Delaware corporation. TMP acquired all of the stock of SPEC-DE and SPEC-PA. Thereafter, SPEC-DE and SPEC-PA existed as a wholly-owned subsidiary of TMP, within the eResourcing Group of TMP. The Agreement and Plan of Merger stated that SPEC-DE "shall continue its corporate existence under the laws of the State of Delaware. The name of the Surviving Corporation shall continue

---

[2] Effective April 1, 2000, Hill entered into a SPEC Group Holdings, Inc. Stock Option Agreement with SPEC-DE.

to be the name of the Company prior to the Merger" and, further, contemplated that SPEC-DE would by operation of law assume all of its own liabilities and obligations. *See* Agreement and Plan of Merger at § 1.1(a) and (b).

The Agreement and Plan of Merger further provided, in pertinent part, as follows:

> At the Effective Time, each award, option, or other right to purchase or acquire Company's capital stock pursuant to any stock awards, stock options, stock appreciation rights or other benefits or other agreement ("Company Rights") granted or entered into by the Company under any employee stock option or compensation plan . . . ("Company Stock Plans") which are outstanding at the Effective Time, whether or not vested or exercisable, . . . shall be converted into and become rights with respect to TMP Common Stock.

(Agreement and Plan of Merger, § 2.1(e).) Thus, the stock options granted to Hill under the 1999 and 2000 Agreements continued to be viable, albeit subject to a conversion to TMP option shares.

Also effective December 6, 2000, each and every director of SPEC-DE resigned their position. At the time of the merger, the employees of SPEC-DE were provided with a memorandum from TMP which explained the transition from SPEC-DE to TMP. The memo indicated that TMP was founded in 1967 by Andy McKelvey and had offices in twenty- nine (29) countries. The memo also noted that SPEC-DE was joining a company that Wall Street valued at over seven (7) billion dollars and was expected to double in size within the next twelve (12) months. At the time of the merger, TMP's global headquarters was in New York City and its chairman was Andy McKelvey.

On December 28, 2001, SPEC-DE filed a Certificate of Amendment of its Certificate of Incorporation with the Delaware Secretary of State, which changed its corporate name from "Spec Group Holdings, Inc." to "TMP Worldwide eResourcing Holdings, Inc."

5

During the latter part of 2002, TMP decided to divest itself of a number of its subsidiaries, including TMP Worldwide eResourcing Holdings, Inc. On or about January 6, 2003, an entity named TMP Worldwide Search, Inc., was incorporated in Delaware as a wholly-owned subsidiary of TMP. In a package to TMP shareholders, it was announced that the new company would employ approximately 4,000 employees in thirty-one (31) countries. The memo further advised that the new entity would be an independent, publicly-held company and that TMP would own no shares of its capital stock. John F. Chait was elected Chairman and Chief Executive Officer of the new entity, which would be headquartered in Chicago, Illinois. According to Greg Lignelli, currently the Chief Operating Officer at System One and former executive Vice President of Hudson's Energy Group, by the time Hudson spun-off from TMP, almost all of the prior management of SPEC-DE had left the company.

On or about February 24, 2003, TMP Worldwide Search, Inc., changed its name to "Hudson Highland Group, Inc."

On March 26, 2003, as part of the series of corporate restructuring transactions necessary to effectuate the TMP spin-off to Hudson Highland Group, Inc., TMP Worldwide eResourcing Holdings, Inc. (formerly SPEC-DE) filed a Certificate of Amendment to Certificate of Incorporation which changed its corporate name from "TMP Worldwide eResourcing Holdings, Inc." to "Hudson Highland Group Global Resources Holdings, Inc."

On March 31, 2003, Hudson Highland Group, Inc., became an independent, publicly-traded corporate entity. The terms of the distribution / spin-off transaction were memorialized in a Distribution Agreement By and Between TMP Worldwide Inc. and Hudson Highland Group, Inc. Hudson Highland Group, Inc. had three divisions, Hudson Americas, Hudson

6

Europe, and Hudson Asia-Pacific. Hudson Energy Group was one of Hudson Americas' six primary business lines and was operated by Hudson Holdings and Hudson Management.

Significantly, the Distribution Agreement transferred the employees of TMP to Hudson "on substantially the same terms and conditions (including compensation and benefits, other than equity compensation)" and provided that Hudson would "assume, pay, perform and discharge any and all outstanding Liabilities or other obligations" of TMP "other than Liabilities associated with TMP stock options." *See* Distribution Agreement, § 5.01(b) and (c) (emphasis added). Accordingly, on March 31, 2003, Hill became an employee of Hudson Highland Group Global Resources Holdings, Inc., but there was no transfer of rights to Hill such that he could have sought to exercise and/or enforce the Stock Option Agreements and there was no assignment / transfer to or right in Hudson to enforce the restrictive covenants related thereto.

On or about May 28, 2003, SPEC-PA merged with and into Hudson Highland Group Global Resources Holdings, Inc. Upon being merged with and into Hudson Highland Group Global Resources Holdings, Inc., the corporate status of SPEC-PA, as the non-surviving corporation in the merger, was changed to that of a withdrawn incorporated business effective June 11, 2003.

On July 29, 2003, several months after the TMP spin-off, Hudson Highland Group Global Resources Holdings, Inc., filed a Certificate of Amendment with the Delaware Secretary of State, by which it changed its corporate name from "Hudson Highland Group Global Resources Holdings, Inc." to "Hudson Global Resources Holdings, Inc."

As of 2007, neither Sakey, Stevens, McMahill or Schulinger were involved with Hudson Global Resources Holdings, Inc.

On February 4, 2008, Hudson Highland Group, Inc., sold substantially all of the assets and liabilities of its wholly-owned subsidiaries Hudson Global Resources Holdings, Inc. and Hudson Global Resources Managements, Inc. to System One Holdings, L.L.C.

### Assignability of Restrictive Covenants

As noted *supra,* on August 1, 1999, Hill entered into a Stock Option Agreement with SPEC Group Holdings, Inc., a Pennsylvania corporation. Paragraph 20(c) of the Stock Option Agreement provides that "[t]he validity, performance, construction and effect of this Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without giving effect to principles of conflicts of law."

On April 1, 2000, Hill entered into a Stock Option Agreement with SPEC Group Holdings, Inc., a Delaware corporation. Paragraph 20(c) of that Stock Option Agreement provides that "[t]he validity, performance, construction and effect of this Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without giving effect to principles of conflicts of law."

The 1999 and 2000 Stock Option Agreements reflect that Hill, in consideration for the grant of stock options, entered into restrictive covenants that limit his conduct both during and after his employment with SPEC Group Holdings, Inc. The 1999 Stock Option Agreement provided for an option to Hill to acquire a certain number of shares of SPEC-PA at a certain option price based upon Hill meeting certain performance measurements. Sections 13 and 14 of the 1999 Stock Option Agreement contain non-solicitation, non-competition, and

8

confidentiality provisions. The 1999 Stock Option Agreement did not contain an assignment provision permitting the assignment or transfer by SPEC-PA of its rights in the agreement.

The options granted pursuant to the 2000 Stock Option Agreement were tenure-based, in that the options would vest if and to the extent that Hill remained employed by the SPEC-DE entity. Sections 13 and 14 of the 2000 Stock Option Agreement contain non-solicitation, non-competition, and confidentiality provisions. The 2000 Stock Option Agreement did not contain an assignment provision permitting the assignment or transfer by SPEC-DE of its rights in the agreement.

Under both Pennsylvania law and Delaware law, a restrictive covenant in an employment agreement is not assignable to a subsequent employer in the absence of a specific provision which permits assignment. *See Hess v. Hebhard & Co., Inc.*, 808 A.3d 912, 921 (Pa. 2002); *Caldwell v. Flexible Staffing, Inc.*, No. 5204, 5205, 1976 Del. Ch. Lexis 149 (1976) (noting the absence of an assignment provision and holding that corporation could not avail itself of a restrictive covenant from the employees of a franchise operation to which it did not succeed).

**Discussion**

The sole issue before the Court is whether the restrictive covenants contained in the 1999 and 2000 Stock Option Agreements are enforceable by Plaintiff.³ Plaintiff argues that

---

3        Plaintiff also seeks summary judgment on the issue of whether "SPEC Group Holdings, Inc. was entitled to enforce the restrictive covenants in 1999 and 2000, when the parties entered into those Agreements." Pl's Reply at 1 (Document No. 101). For the purpose of this Memorandum Opinion only, the Court will assume that the restrictive covenants in the 1999 and 2000 Stock Option Agreements were valid when they were entered into. Plaintiff also seeks summary judgment on the
(continued...)

9

Hudson "is the very same corporate entity" that incorporated SPEC Group Holdings, Inc. and, therefore, no assignment clause was needed. Defendants contend that the spin-off from TMP to Hudson created a totally new company that was fully independent from TMP. The Court agrees with Defendants.

The clear language of the Distribution Agreement between TMP and Hudson unequivocally states that the employees of TMP will be transferred to Hudson on the same terms and conditions <u>except with respect to the employees' equity compensation</u>. Further, under the Distribution Agreement, Hudson assumed all liabilities of TMP <u>other than obligations relating to stock options.</u> The Court finds and rules that the clear language of the Distribution Agreement militates against Plaintiff's argument and supports both Hill and DTS in their argument that the TMP / Hudson spin off was more than a mere change in name. In fact, there was a "substantive effect upon the corporate existence of SPEC" such that the restrictive covenants of the SPEC Stock Option Agreements are not enforceable by Hudson or System One.

Interestingly, at the time of the merger between SPEC-DE and TMP, the employees were advised that SPEC stock options would be converted to TMP stock options. Tellingly, at

---

[3](...continued)
issue of whether "System One Holdings, L.L.C., as the real party in interest to the rights of Hudson Global Resources Holdings, Inc., is entitled to prosecute the chose in action embodied by this litigation." Because the Court has found that when Hill became a Hudson employee there was no transfer of rights to Hill such that he could have sought to enforce the Stock Option Agreements and there was no transfer to or right in Hudson to enforce the restrictive covenants, such issue is moot.

the time of the spin-off from TMP to Hudson, no similar communications were made because the SPEC Stock Option Agreements did not survive the spin-off from TMP to Hudson.

Moreover, at the preliminary hearing, Lignelli testified that Hill was not subject to a non-competition agreement. Hudson Highland Group, Inc. maintained a corporate policy that the employees of all of its subsidiaries were to sign certain agreements which contained restrictive covenants. In February of 2006, Hudson Highland Group, Inc. (the corporate parent of Hudson Global Resources Holdings, Inc.) presented Hill with such an agreement, known as the HHG Agreement, which included non-compete, non-solicitation, and confidentiality provisions. Hill refused to sign it. Despite the refusal by Hill to sign the HHG Agreement, Hudson did not terminate Hill or did it limit his access to information.

In order for the restrictive covenants in the Stock Option Agreements to be enforceable by Plaintiff, the Stock Option Agreements must contain an assignability provision or Hill must have consented to their assignment (from SPEC to TMP to Hudson to System One). There being no assignment provision or consent in this case, as a matter of law, the Court finds and rules that the 1999 and 2000 SPEC Option Agreements are not enforceable by Plaintiff to bind Hill or to create a basis for its claims against DTS.

**Conclusion**

For the all the aforementioned reasons, the Motions for Partial Summary Judgment filed by Defendants Ralph H. Hill, Jr. and Diamond Technical Services, Inc. will be granted and the Motion for Partial Summary Judgment filed by Plaintiff, System One Holdings, LLC will be denied.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYSTEM ONE HOLDINGS, L.L.C., a <br> Delaware limited liability company, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) | 02: 07cv0132 |
| | ) | |
| RALPH HILL, JR., an individual, and <br> DIAMOND TECHNICAL SERVICES, INC., <br> a Pennsylvania corporation, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, this 26th day of August, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** as follows:

(i) the MOTION FOR PARTIAL SUMMARY JUDGMENT filed by Defendant Ralph H. Hill, Jr., is **GRANTED**:

(ii) the MOTION FOR PARTIAL SUMMARY JUDGMENT filed by Diamond Technical Services, Inc., is **GRANTED;** and

(iii) the MOTION FOR PARTIAL SUMMARY JUDGMENT Plaintiff System One Holdings, L.L.C. is **DENIED.**

It is further **ORDERED** that (i) Count III of Plaintiff's Verified Amended Complaint is **DISMISSED** with prejudice and (ii) Plaintiff's allegations in Count VI, VII, IX and X, based on the restrictive covenant language are hereby **DISMISSED** with prejudice.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
United States District Court Judge

cc:    Eric S. Newman, Esquire
       Cohen & Grigsby
       Email: enewman@cohenlaw.com

       Robert M. Linn, Esquire
       Cohen & Grigsby
       Email: rlinn@cohenlaw.com

       Stuart H. Sostmann, Esquire
       Marshall, Dennehey, Warner, Coleman & Goggin
       Email: shsostmann@mdwcg.com

       Teresa O. Sirianni, Esquire
       Marshall, Dennehey, Warner, Coleman & Goggin
       Email: tosirianni@mdwcg.com

       Carl E. Harvison, Esquire
       Cipriani & Werner
       Email: charvison@c-wlaw.com

       Alan T. Silko, Esquire
       Levicoff, Silko & Deemer
       Email: ASilko@LSandD.net